**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Parris Lavon HARPER, Appellant**

Superior Court of Pennsylvania.

Submitted Dec. 5, 2005.
Filed Jan. 11, 2006.

Clinton L. Johnson, Chester, for appellant.

John F.X. Reilly, Assistant District Attorney, Media, for Commonwealth, appellee.

Before: TODD, BOWES and TAMILIA, JJ.

OPINION BY BOWES, J.:

¶ 1 Parris Lavon Harper appeals the September 23, 2004 order vacating a prior order granting him a new trial. The new trial was rescinded after the PCRA court discovered that it was procured with the use of perjured testimony. We affirm.

¶ 2 On June 17, 1999, a jury found Appellant guilty of second degree murder and robbery based on the December 11, 1997 shooting death of David Purvis. On the day in question, Purvis and Pedro Rios traveled from Newark, New Jersey, to sell a large quantity of heroin in brick form in Chester, Pennsylvania. Appellant was engaged to cut the heroin. Instead, he attempted to rob Purvis of the heroin at gunpoint and when the victim started to flee rather than relinquish the heroin, Appellant shot him to death. Rios was an eyewitness to the murder and identified Appellant as the shooter. In addition, John Roberts, a young man who lived in the neighborhood and was a friend of Appellant, saw Appellant shoot Purvis.

¶ 3 Following his conviction, Appellant was sentenced to life imprisonment, and on appeal, we affirmed the judgment of sentence. *Commonwealth v. Harper*, 766 A.2d 887 (Pa.Super.2000) (unpublished memorandum). On October 12, 2001, Appellant filed a timely motion for PCRA relief. At his February 1, 2002 hearing on that motion, Appellant presented the testi-

mony of Michael Watson.[1] Watson testified that in 1997, when he was thirteen to fourteen years old, he lived in Maryland with his mother but on December 11, 1997, was in Chester visiting his girlfriend, Levonia Brown, who lived near the site of the murder. He knew Appellant and Sean McKinney. Watson indicated that, on the night of December 11, 1997, he saw McKinney rather than Appellant shoot Purvis. Watson represented that he returned home on December 12, 1997, and was picked up by his mother. He first heard about Appellant's conviction in 2001, when he contacted Appellant's mother, Roxanne Harper, to offer his assistance. Watson testified that he did not know Roxanne Harper prior to 2001.

¶ 4 Based solely on Watson's testimony, on June 30, 2003, the PCRA court granted Appellant a new trial. The Commonwealth subsequently filed a petition for reconsideration, and the PCRA court conducted a hearing on that petition on May 24, 2004. At that hearing, the Commonwealth presented the testimony of Watson's mother and father, officials where he attended school in 1997, Levonia Brown, and Delaware County Criminal Investigation Division Detective Michael Palmer. Those witnesses established that Watson's February 1, 2002 testimony was entirely false. On December 11, 1997, Watson lived with his father in Wilmington, Delaware, and attended middle school. He was present at school on December 11 and December 12, 1997. Appellant's mother stated that she was not able to drive on highways in December 1997 due to anxiety disorder and did not pick him up anywhere on December 12, 1997. Watson first met Roxanne Harper in 1998, when Watson lived in the same apartment complex as

Appellant and Roxanne. Levonia Brown testified for the Commonwealth that she was never Watson's girlfriend and did not meet him until November 1999, when Watson worked at the same grocery store as Ms. Brown and Roxanne Harper. Ms. Brown also testified that Roxanne Harper and Michael Watson drove to and from work together.

¶ 5 While Watson did not testify at the May 24, 2004 hearing, Detective Palmer testified that he interviewed Watson after arresting him on an outstanding bench warrant. During that interview, Watson revealed that he had testified at the PCRA hearing because Roxanne Harper was blackmailing him by threatening to spread false rumors about him to members of a gang to which he belonged. Watson admitted that he was sorry that he testified falsely at the PCRA hearing, but would not retract his February 1, 2002 testimony because he feared he would be killed at the instigation of Roxanne Harper.

¶ 6 On September 23, 2004, the PCRA court rescinded its decision to grant Appellant a new trial, finding that it was evident that Watson's entire testimony at the February 1, 2002 hearing was fabricated and that Appellant's new trial had been obtained by a fraud perpetrated on the court. The PCRA court credited all the testimony from the May 24, 2004 hearing. This appeal followed, wherein Appellant suggests that on September 23, 2004, the PCRA court did not have jurisdiction to rescind its June 30, 2003 award of a new trial. We disagree.

¶ 7 Initially, we recite our standard of review. "On consideration of an order denying post-conviction relief, the appellate review centers on an examination

---

1. Since the February 1, 2002 transcript is not in the trial court's record, we rely upon the court's representation of Watson's testimony.

of whether the evidence of record supports the PCRA court's ruling and whether such ruling is free from legal error." *Commonwealth v. Halley,* 582 Pa. 164, at n. 2, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr,* 768 A.2d 1164, 1166 (Pa.Super.2001).

 ¶ 8 Appellant relies upon an interplay between 42 Pa.C.S. § 5505 and Pa. R.Crim.P. 910. Rule 910 states, "An order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal." Section 5505,[2] modification of orders, allows the modification of a final order for a period of only thirty days, but it does not apply to interlocutory orders, which can be modified beyond the thirty-day time frame. *Commonwealth v. Nicodemus,* 431 Pa.Super. 342, 636 A.2d 1118 (1993); *Commonwealth v. McMillan,* 376 Pa.Super. 25, 545 A.2d 301 (1988).

 ¶ 9 A final order is one that ends the litigation or disposes of the entire case. *Nicodemus, supra.* An order granting a new trial is not a final order in a criminal proceeding; it is the judgment of sentence that constitutes a final order. *McMillan, supra.* Since the order under consideration herein in no manner terminated this criminal action, it was not final.

¶ 10 Pa.R.Crim.P. 910 states that an order granting PCRA relief is final only **for purposes of appeal** and by its very terms, applies only to the right to appeal. Rule 910 does not change the character of the order in question for purposes of section 5505, which governs the modification of orders and is a legislative enactment. Thus, Pa.R.Crim.P. 910 did not impact on the PCRA court's authority to modify its clearly interlocutory order under section 5505. Due to the operation of Pa. R.Crim.P. 910, the Commonwealth lost its right to appeal the order granting the new trial once thirty days had expired; however, it did not lose its right to seek reconsideration.

 ¶ 11 Furthermore, even if the order was deemed "final" for purposes of section 5505 due to the operation of Pa.R.Crim.P. 910, we would permit it to be opened in this instance because it was procured by fraud. In *Estate of Gasbarini v. Medical Center of Beaver County, Inc.,* 487 Pa. 266, 409 A.2d 343, 345 (1979), the plaintiff successfully petitioned the trial court to vacate a prior order it had entered sustaining preliminary objections and dismissing the action even though more than thirty days had transpired since the dismissal. The Supreme Court upheld the trial court, stating:

> As a general rule, where preliminary objections are sustained and a complaint is dismissed, the order sustaining the preliminary objections and dismissing the complaint is final and appealable. *Cantanese v. Scirica,* 437 Pa. 519, 263, A.2d 372 (1970); *Love v. Temple University,* 422 Pa. 30, 220 A.2d 838 (1966). After said appeal time has expired, the doctrine of res judicata becomes applicable and the order may not be vacated. *Love v. Temple University, supra.* This general rule, however, is by no means absolute.
>
> In *York v. George,* 350 Pa. 439, 39 A.2d 625 (1944), we held that the general rule may be disregarded and an unap-

---

**2.** 42 Pa.C.S. § 5505 states:

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

pealed judgment opened if fraud or other equitable considerations required the granting of such relief. *See Fredley v. Crandall Filling Machinery, Inc.*, 234 Pa.Super. 530, 342 A.2d 757 (1975). As our Superior Court has stated in *Great American Credit Corp. v. Thomas Mini–Markets, Inc.*, 230 Pa.Super. 210, 213, 326 A.2d 517, 519 (1974), "Where equity demands, the power of the court to open and set aside its judgments may extend well beyond the term in which the judgment is entered."

*Id.* at 270, 409 A.2d at 345. Similarly, in the criminal context, the courts retain certain powers to alter even final judgments beyond the thirty days outlined in section 5505:

> The power to modify a sentence in order to amend records, to correct mistakes of court officers or counsel's inadvertencies, or to supply defects or omissions in the record is inherent in our court system. *Commonwealth v. Fiore*, 341 Pa.Super. 305, 491 A.2d 276 (1985). A sentencing court can, *sua sponte*, correct an illegal sentence originally imposed, even after the defendant has begun serving the original sentence. *Commonwealth v. Jones*, 520 Pa. 385, 554 A.2d 50 (1989). Where an initial punishment was procured by fraud, the trial court may decrease or increase the initial sentence. *Id. Commonwealth v. Meyer*, 169 Pa.Super. 40, 82 A.2d 298 (1951). This inherent power of the court to correct obvious and patent mistakes is not eliminated by the expiration of the thirty-day appeal period. *Commonwealth v. Cole*, 437 Pa. 288, 263 A.2d 339 (1970). In *Cole*, the Pennsylvania Supreme Court explained that an order granting both a new trial and an arrest

of judgment was clearly contradictory; thus, the original order was patently erroneous and could be corrected even after the thirty days had passed. *Id. Commonwealth v. Quinlan*, 433 Pa.Super. 111, 639 A.2d 1235, 1239 (1994).

¶ 12 The courts simply will not countenance fraud, and when a decision is obtained through its use, the court retains the inherent power to rescind that decision. In the present case, the PCRA court found that Appellant obtained a new trial through blackmail and perjury. This finding is supported by the record. Based on the fraud perpetrated upon it, the trial court retained the inherent power to reverse its prior decision.[3]

¶ 13 Order affirmed.

---

**3.** We commend Deputy District Attorney John F.X. Reilly on the quality of his appellate brief.