J-S80014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| WALTER A. SMITH | : | |
| Appellant | : | No. 2094 EDA 2017 |

Appeal from the PCRA Order June 16, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0607261-2003

BEFORE: BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 23, 2018**

Walter Smith appeals *pro se* from the order denying his second PCRA petition as untimely. We affirm.

We previously set forth the facts in a prior memorandum, which we adopt herein.

On June 22, 1999, Steven Taylor (victim) was fatally shot while behind the wheel of a vehicle in North Philadelphia. N'Cole Pendergrass testified at trial that around 3:30 p.m. he was walking home and walked through a driveway located between Patton and 32nd Streets in North Philadelphia. While walking through the driveway, Mr. Pendergrass saw the victim, who was driving a gray Oldsmobile, pull into the driveway he was walking in and drive past. The victim, who was in the car by himself, stopped the car in the driveway and Mr. Pendergrass observed that [Appellant] was standing about 10 to 12 feet from the victim's driver side door and was on foot. Mr. Pendergrass then went inside of his residence and heard "five pops go off" after which he immediately went outside of his residence again. Once outside of his residence, Mr. Pendergrass saw the victim's car pass him, with the victim inside, heading north on the driveway and then heard a loud crash. Mr. Pendergrass then saw

[Appellant] running down the driveway with a dark object in his hand, although he could not identify this object as a gun. After approaching the victim's car, which had crashed into a wall, Mr. Pendergrass observed that the victim was twitching and saw that he had suffered a wound to his chest and face and had glass from the car crash all over his body. He also saw that there were two bullet holes in the front driverside door. Mr. Pendergrass recalled that, a couple of days prior to the shooting, he had seen [Appellant] and the victim on 33rd Street and Allegheny Avenue having a physical altercation. The victim suffered four gunshot wounds which ultimately caused his death.

Rashawn Perry also testified at trial. On the day of the shooting, Mr. Perry had been cleaning his garage when he heard the shooting. He then saw [Appellant] running near 32nd Street toward 33rd Street. Mr. Perry recognized [Appellant], having seen him in the neighborhood on two occasions prior to the date of the shooting. He also identified [Appellant] in a photo array on the day of the shooting, although at trial he testified he had actually identified three different individuals in the array and not just one.

**Commonwealth v. Smith**, 40 A.3d 183 (Pa.Super. 2011) (footnote omitted, alterations in original).

Appellant fled and was not apprehended until 2003. He waived his right to a jury trial and was found guilty of, *inter alia*, first-degree homicide, and sentenced on July 8, 2005. Appellant was unsuccessful on direct appeal. **Commonwealth v. Smith**, 935 A.2d 22 (Pa.Super. 2007). Appellant requested further review with the Supreme Court of Pennsylvania, which denied his request on March 25, 2008. **Commonwealth v. Smith**, 945 A.2d 170 (Pa. 2008).

Thereafter, Appellant timely pursued relief through the PCRA. The PCRA court denied relief, and, on appeal, we remanded for an evidentiary hearing as to whether trial counsel was ineffective with respect to advice not

to testify at trial. ***Commonwealth v. Smith***, 40 A.3d 183 (Pa.Super. 2011). Following remand, the PCRA court held an evidentiary hearing and denied relief, which we affirmed on appeal. ***Commonwealth v. Smith***, 81 A.3d 991 (Pa.Super. 2013).

Appellant thereafter filed the instant PCRA petition, his second, on December 22, 2016. Within the petition, Appellant asserted that his petition was timely due to governmental interference, 42 Pa.C.S. § 9545(b)(1)(i), specifically, that the Commonwealth violated its disclosure obligations pursuant to ***Brady v. Maryland***, 373 U.S. 83 (1963) (prosecution's suppression of evidence favorable to accused, when requested, violates due process).

At this juncture, we note that Appellant pursued a post-sentence motion claim, filed October 27, 2005, asserting that he was unaware that Mr. Pendergrass had previously used a different name, Linwood Pressley. The basis for that claim was an obituary notice for Mr. Pendergrass that used the Pressley name.[1] Appellant pursued that claim both as an ineffectiveness claim, *i.e.* trial counsel failed to adequately investigate Mr. Pendergrass, and

---

[1] Linwood Pressley had been convicted of *crimen falsi* crimes in 1973 and 1986, over ten years before the instant trial. The Commonwealth notes that there is no evidence that "[Mr.] Pendergrass was legally named 'Linwood Pressley,' and was not legally or commonly known by the name "[Mr.] Pendergrass." Commonwealth's brief at 11. For purposes of our analysis, the accuracy of these representations is irrelevant.

separately as a violation of Appellant's constitutional right to confront his accusers, in that he did not know the true identity of his accuser.

On May 8, 2017, the PCRA court issued a notice of intent to dismiss, noting that Appellant knew of Mr. Pendergrass's existence in 2005 as demonstrated by his post-sentence motions, and therefore the claim was untimely.

Appellant filed a response, which also served as a motion to amend his prior pleading. Appellant cited **Commonwealth v. Harper**, 890 A.2d 1078 (Pa.Super. 2006), as a basis for jurisdiction, an issue discussed *infra*. On June 16, 2017, the PCRA court entered an order dismissing the petition, and this timely appeal followed. Appellant presents the following issue for our review.

> Did the PCRA court error by dismissing the **Brady** claim as untimely when the prosecution committed fraud on the court and the PCRA court had inherent power to correct fraud pursuant to this court's decision in [**Harper**]?

Appellant's brief at 3.[2]

_____

[2] The Commonwealth filed its brief six days after the deadline and did not request an extension. On December 16, 2017, Appellant filed a motion to strike the Commonwealth's brief, or, in the alternative, permit Appellant to file a reply brief. The Commonwealth responded, noting that "[t]he undersigned attorney had believed he could prepare the brief without the need to petition for any extension of time but was incorrect and filed the brief six days after the initial due date." Answer, 12/18/17, at 3.

We have little doubt that the Philadelphia County District Attorney's office would not look favorably upon such a feeble defense to a missed deadline if
*(Footnote Continued Next Page)*

This Court reviews the "denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." ***Commonwealth v. Roane***, 142 A.3d 79, 86 (Pa.Super. 2016) (quoting ***Commonwealth v. Treiber***, 121 A.3d 435, 444 (Pa. 2015)). All PCRA petitions must be filed within one year of the date a defendant's judgment of sentence becomes final unless an exception to the one-year time restriction applies. 42 Pa.C.S. § 9545(b)(1). If a PCRA petition is untimely, "neither this Court nor the trial court has jurisdiction over the petition." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "As the timeliness of a PCRA petition is a question of law, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Callahan***, 101 A.3d 118, 121 (Pa.Super. 2014) (citation omitted).

---

*(Footnote Continued)* ─────────────────

offered by a defendant. By order dated October 3, 2017, and served electronically on October 6, 2017, the Deputy Prothonotary of this Court informed the Commonwealth that the briefs were due November 2, 2017. The brief missed that deadline by six days, and the Commonwealth fails to explain why it did not request an extension when it became clear its confidence in meeting the deadline was misplaced.

Nevertheless, Appellant's motion concedes that the Commonwealth's brief was furnished on November 30, 2017, and Appellant could have filed any reply brief along with the instant motion. We therefore deny both requests, but remind the Commonwealth that deadlines are not suggestions.

The pertinent consideration, as it is in all PCRA petitions that are facially untimely, is whether the petition alleged and proved one or more of the following exceptions:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, any petition seeking to raise any of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Appellant maintains that the Commonwealth knew that Mr. Pendergrass lied about his identity, as evidenced by his bringing a **Brady** claim. A **Brady** claim may qualify as an exception to the PCRA time-bar, as the information learned by the petitioner, *i.e.* the information that is said to have been withheld by the prosecution, can qualify as "facts . . . [that] were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" **Id**.

Simultaneously, a petitioner must establish that the claim was raised within sixty days of when the claim could first have been presented, and, in

this case, that requirement dooms Appellant's claim. There is no doubt that Appellant was aware of the information in 2005, and therefore his 2016 filing was not within sixty days of when that claim could have been presented.

Appellant attempts to ignore this limitation by holding that the government interfered with his ability to bring the claim by failing to disclose the material in discovery. However, as our Supreme Court explained in **Commonwealth v. Abu-Jamal**, 941 A.2d 1263 (Pa. 2008):

> Although a **Brady** violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence. Section 9545(b)(1)(ii)'s exception requires the facts upon which the **Brady** claim is predicated were not previously known to the petitioner and could not have been ascertained through due diligence. **Commonwealth v. Lambert**, 584 Pa. 461, 884 A.2d 848, 852 (2005). In [**Commonwealth v.**] **Bennett**, [941 A.2d 1263 (Pa. 2008)], we clarified that § 9454(b)(1)(ii)'s exception does not contain the same requirements as a **Brady** claim, noting "we made clear the exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence." **Bennett**, at 1271 (quoting **Lambert**, at 852).

**Id**. at 1268 (citation omitted). Herein, the facts were clearly known to Appellant in 2005, and the PCRA court correctly determined that it lacked jurisdiction to address the merits of his claim.

Next, we address Appellant's contention that the foregoing analysis misconstrues his argument. Appellant agrees that he knew of the evidence years ago, but states that fraud was committed upon the court, and avers

- 7 -

that pursuant to **Harper**, **supra**, the court retains an inherent power, *i.e.* unconstrained by the PCRA's time limitations, to cure fraud. We now examine the case.

In **Harper**, the PCRA court granted a new trial due to testimony by Michael Watson, who stated that he observed the murder in question and witnessed someone other than Harper commit the crime. "Based solely on Watson's testimony . . . the PCRA court granted [Harper] a new trial." **Id**. at 1080. Some unspecified time later, the Commonwealth filed a petition for reconsideration and presented testimony from several witnesses, including Watson's parents, and records that established Watson's testimony was entirely false. The PCRA court determined that "[Harper]'s new trial had been obtained by a fraud perpetrated on the court." **Id**. That order, which rescinded the prior order granting a new trial, was entered almost one year after Harper received a new trial.

On appeal, Harper argued that the order granting him a new trial was a final order, and could be modified only for a period of thirty days. Harper's argument focused on the interplay of 42 Pa.C.S. § 5505 and Pa.R.Crim.P. 910. First, § 5505 states that an order may only be modified or rescinded within thirty days, provided no appeal has been taken:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S. § 5505. Harper paired that statute with Pa.R.Crim.P. 910, which states that "An order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal." Thus, Harper maintained that Rule 910 dictated that the order granting him a new trial was final, and, pursuant to § 5505, could not be revisited after thirty days.

We disagreed, and held that "An order granting a new trial is not a final order in a criminal proceeding; it is the judgment of sentence that constitutes a final order. Since the order under consideration herein in no manner terminated this criminal action, it was not final." *Id*. at 1081. Additionally, we held that Rule 910 only governed the finality of an order for purposes of appeal. Thus, the order granting a new trial required the Commonwealth to appeal within the applicable time period, but did not create a final order for other purposes.

Next, we further held that the Commonwealth did not lose its right to seek reconsideration of the order granting a new trial, since that order was interlocutory. Pursuant to case law, § 5505 "applies only to final [o]rders . . . [it] does not apply to interlocutory [o]rders." *Commonwealth v. Nicodemus*, 636 A.2d 1118, 1120 (Pa.Super. 1993) (citations omitted).

Additionally, we went on to state in *dicta* that "even if the order was deemed 'final' . . . we would permit it to be opened in this instance because it was procured by fraud." *Harper* stated that "in the criminal context, the

courts retain powers to alter even final judgments beyond the thirty days outlined in section 5505." **Harper**, **supra** at 1081.

Appellant focuses on this latter observation and argues that his conviction was procured by fraud, and is therefore amenable to correction even outside of the PCRA context, presumably through a joint application of the PCRA and § 5505. We disagree, and find that **Harper** is readily distinguishable. First, in **Harper**, the *dicta* stating that the order in question could be revisited even if it were final is not the holding, as we actually held that the order granting PCRA relief was interlocutory, at least for purposes of § 5505. "Rule 910 does not change the character of the order in question for purposes of section 5505, which governs the modification of orders and is a legislative enactment." **Id**. Thus, we are not bound by **Harper**.

Alternatively, even accepting that portion of **Harper** as precedential, the order sought to be reopened by Appellant is the judgment of sentence, which was made final long ago. **Harper** addressed a trial court invoking § 5505 to rescind an order granting PCRA relief, whereas here Appellant is attempting to modify his judgment of sentence by seeking a new trial due to a defect in the trial process occasioned by a Commonwealth's witness's use of an alias. It is clear that the effect of that error with respect to the reliability of his conviction is cognizable under the PCRA, and therefore Appellant must comply with, *inter alia*, the time limitations set forth at 42 Pa.C.S. § 9545.

Furthermore, we hold that § 5505 simply does not apply to Appellant's fraud claim. As our Supreme Court observed in **_Commonwealth v. Holmes_**, 933 A.2d 57 (Pa. 2007), the exception to the thirty-day time period for purposes of revisiting a criminal sentence under § 5505 is severely limited.

> This exception to the general rule of Section 5505 cannot expand to swallow the rule. In applying the exception to the cases at bar, we note that it is the obviousness of the illegality, rather than the illegality itself, that triggers the court's inherent power. Not all illegal sentences will be amenable to correction as patent errors.

**_Id_**. at 66-67.

Herein, the "illegality" of Appellant's sentence is not obvious, as Appellant is not, in truth, attacking the legality of his sentence; rather, he is attacking the reliability of the process that led to his conviction, which in turn resulted in his judgment of sentence. The two are obviously closely related, as there could be no criminal sentence without a valid conviction. Nevertheless, the PCRA remains the avenue to challenge the underlying conviction, and Appellant cannot sidestep the PCRA by attempting to manufacture jurisdiction through § 5505. As we observed in **_Commonwealth v. Jackson_**, 30 A.3d 516 (Pa.Super. 2011), § 5505 cannot independently create jurisdiction:

> We have not found any decision in which our appellate courts have upheld, or in which a PCRA court has invoked, inherent jurisdiction absent statutory authority under 9545. Nor do we believe that a PCRA court could invoke its inherent jurisdiction after this deadline.

- 11 -

. . . .

Because section 5505 does not directly prohibit a court from correcting an order after the deadline, our courts have recognized a limited equitable exception to the statute that permits a trial court to correct obvious illegalities in its sentences that are not discovered within the 30–day statutory period.

. . . .

Further, our courts have interpreted jurisdiction under section 9545 differently than section 5505. Unlike section 5505, section 9545 does not merely grant a court authority to consider a PCRA petition for a limited period of time; it acts to divest a court of jurisdiction once the filing period has passed. Therefore, when the one-year filing deadline of section 9545 has expired, and no statutory exception has been pled or proven, a PCRA court cannot invoke inherent jurisdiction to correct orders, judgments and decrees, even if the error is patent and obvious.

*Id*. at 522–23 (citation omitted). As such, we reject Appellant's assertion

that the court had inherent jurisdiction to grant him a new trial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/23/18</u>