J-S32029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                  :            PENNSYLVANIA
                                  :
             v.                      :
                                  :
                                  :
RENEA ANN CARBAUGH                    :
                                  :
            Appellant              :       No. 410 MDA 2022

Appeal from the Judgment of Sentence Entered February 2, 2022
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0001380-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY BENDER, P.J.E.:           **FILED: DECEMBER 1, 2022**

Appellant, Renea Ann Carbaugh, appeals from the judgment of sentence of five years' probation, imposed after she was convicted, following a non-jury trial, of her third offense of driving under the influence of alcohol — high rate of alcohol (DUI), 75 Pa.C.S. § 3802(b), and her second offense of driving while operating privilege is suspended or revoked, 75 Pa.C.S. § 1543(b)(1.1)(ii). On appeal, Appellant challenges the court's denial of two of her pretrial motions: one to suppress evidence stemming from the stop of Appellant's vehicle, and another to dismiss the charges pending against Appellant for a violation of Pa.R.Crim.P. 600.  After careful review, we affirm.

The facts of Appellant's case can be briefly summarized as follows.  In the early morning hours of May 3, 2019, Pennsylvania State Trooper Zachary Crouse stopped Appellant's vehicle after he observed her failing to properly stop when turning left at an intersection of two roads.  When he approached

her vehicle, the trooper detected an odor of alcohol emanating from Appellant's vehicle. He conducted standardized field sobriety tests on Appellant, which she failed. Trooper Crouse then transported her to a local hospital where she consented to a blood draw that revealed she had a blood alcohol concentration of 0.135.

Appellant was charged with the above-stated offenses on June 20, 2019. She filed a pretrial motion to suppress, contending that the stop of her vehicle was illegal. After a hearing on February 17, 2020, the court denied Appellant's motion. On June 15, 2021, Appellant filed another pretrial motion, seeking the dismissal of her case based on an alleged violation of Pa.R.Crim.P. 600. A hearing was held on September 29, 2021, and on December 3, 2021, the court issued an order and opinion denying Appellant's motion to dismiss.

On December 6, 2021, a bench trial was conducted, at the end of which Appellant was convicted of the crimes set forth *supra*. She was sentenced on February 2, 2022. Appellant filed a timely notice of appeal,[1] and she complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, she states two issues for our review:

_____

[1] We note that Appellant's notice of appeal states she is appealing from the judgment of sentence, as well as from the orders denying suppression and dismissal of the charges. However, in a criminal case, the final, appealable order is the judgment of sentence. ***See Commonwealth v. Harper***, 890 A.2d 1078, 1081 (Pa. Super. 2006). Thus, the instant appeal properly lies from the February 2, 2022 judgment of sentence. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (correcting the caption when the appellant misstated from what order the appeal lies).

1. Whether the trial court erred by denying [Appellant's] omnibus motion to suppress evidence because the affiant did not possess probable cause to initiate a traffic stop of [A]ppellant's vehicle?

2. Whether the trial court erred by denying [Appellant's] Rule 600 motion to dismiss because more than 365 days had elapsed from the filing of the criminal complaint that are not excludable days?

Appellant's Brief at 9.

Appellant first challenges the court's denial of her motion to suppress the evidence obtained as a result of the stop of her vehicle. Initially, we note:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Here, Appellant correctly explains that "[a]n officer must have probable cause to make a constitutional vehicle stop when the stop is based on a violation which requires no further investigation." Appellant's Brief at 15 (citing *Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. Super. 2008)).

Additionally, "[t]he officer must possess articulable, specific facts at the time of the stop which would establish probable cause that the vehicle or driver was in violation of the Motor Vehicle Code." *Id.* (citation omitted); *see Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (stating that, where a vehicle stop lacks an investigatory purpose, "it is encumbent [*sic*] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code").

In the instant case, Trooper Crouse stopped Appellant's vehicle based on his belief that she violated 75 Pa.C.S. § 3323(b). That statute reads:

> **(b) Duties at stop signs.--**Except when directed to proceed by a police officer or appropriately attired persons authorized to direct, control or regulate traffic, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line or, if no stop line is present, before entering a crosswalk on the near side of the intersection or, if no crosswalk is present, then at the point nearest the intersecting roadway where the driver has a clear view of approaching traffic on the intersecting roadway before entering. If, after stopping at a crosswalk or clearly marked stop line, a driver does not have a clear view of approaching traffic, the driver shall after yielding the right-of-way to any pedestrian in the crosswalk slowly pull forward from the stopped position to a point where the driver has a clear view of approaching traffic. The driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute a hazard during the time when the driver is moving across or within the intersection or junction of roadways and enter the intersection when it is safe to do so.

75 Pa.C.S. § 3323(b).

Before addressing Appellant's specific arguments, we summarize the testimony provided by Trooper Crouse at the suppression hearing. There, the

trooper testified that he was conducting routine patrol at approximately 1:10 a.m. on Sollenberger Road in Franklin County. N.T. Hearing, 2/17/20, at 8. Trooper Crouse came upon the intersection of Sollenberger Road and Sunset Avenue, which he described as a "blind intersection…." **Id.** at 6, 8. He explained that there is "a slight embankment to the right" of Sunset Avenue that "obscures your vision from seeing … traffic that's traveling Southbound" on Sollenberger Road. **Id.** at 9. Trooper Crouse confirmed that the stop sign on Sunset Avenue is "set back a good distance" from the intersection, so if a driver stops behind the stop sign, they cannot see oncoming traffic to make a left-hand turn onto Sollenberger Road. **Id.** Due to this positioning of the stop sign, Trooper Crouse testified that a driver turning from Sunset Avenue onto Sollenberger Road must "slowly pull out to a point where they can clearly see … oncoming traffic from both directions." **Id.** at 10.

On the night Trooper Crouse stopped Appellant's vehicle, he saw her make a lefthand turn onto Sollenberger Road from Sunset Avenue "very quickly" and without "any form[] of braking…." **Id.** Trooper Crouse acknowledged that he could not see the stop sign on Sunset Avenue from where his car was located when he saw Appellant turn onto Sollenberger Road. **Id.** at 14. Regarding why he stopped Appellant's vehicle, Trooper Crouse testified:

> [Trooper Crouse:] The reason for the stop was a failure to stop at a stop sign. In that, it's a blind intersection and that within … section [3323(b),] it states that you have to stop at the stop sign. You can only proceed through the stop sign if there's another police officer or appropriately attired person that's directing you

to proceed through the stop sign, which there was not any appropriately attired person telling [Appellant's] vehicle to proceed through the intersection. But it also states that you have to stop and then you have to pull out from a location where you can see clear[ly] … oncoming traffic.

*Id.* at 8. Upon further questioning, Trooper Crouse clarified that he stopped Appellant for a violation of section 3323(b) based on the second part of that provision, which he believed required Appellant to "inch [her] way out to be able to make the left-hand turn and assure that there[ was] no traffic coming in either direction…." *Id.* at 16.

Ultimately, the trial court concluded that,

Trooper Crouse's credible testimony and the Affidavit of Probable Cause, supported by the [MVR], established that he observed [Appellant] fail to stop at the stop sign and that there was no police officer or appropriately attired persons authorized to direct, control, or regulate traffic. Photos, entered into evidence, of the scene show that there was no line clearly marking a stop line. So, while [Appellant] argues that Trooper Crouse was not physically in a position to observe whether she came to a stop at the stop line, [Appellant] was required by law to stop at the point nearest the intersecting roadway where the driver has a clear view of approaching traffic because there was no stop line for [Appellant] to stop at. As provided by Trooper Crouse's testimony and supported by the [MVR], Trooper Crouse had a clear view of the point nearest the intersecting roadway. [Appellant] did not stop at the point where she would have had a clear view of approaching traffic. Therefore, Trooper Crouse had articulable specific facts that would provide him with probable cause to stop [Appellant] for being in violation of the Motor Vehicle Code.

Trial Court Opinion (TCO I), 4/20/20, at 2-3 (unnumbered).

On appeal, Appellant first argues that the record does not support the court's conclusion that Trooper Crouse observed Appellant fail to stop at the stop sign on Sunset Avenue. *See* Appellant's Brief at 16-18. Based on the

trooper's admission that he could not see the stop sign from his vantage point on Sollenberger Road, we agree.

However, Appellant is still not entitled to relief. She does not contest the court's factual finding that there was no stop line on Sunset Avenue. Instead, she challenges the court's legal conclusion that she "was required by law to stop at the point nearest the intersecting roadway where [she had] a clear view of approaching traffic…." TCO I at 3 (unnumbered). Appellant contends that section 3323(b) "does not require a driver to stop after pulling forward into an intersection from a stopped position." Appellant's Brief at 18.

We disagree with Appellant. Section 3323(b) directs, in pertinent part, that "every driver of a vehicle approaching a stop sign **shall stop** at a clearly marked stop line or, **if no stop line is present**, … **then at the point nearest the intersecting roadway where the driver has a clear view of approaching traffic** on the intersecting roadway before entering." 75 Pa.C.S. § 3323(b) (emphasis added). The statute further mandates that a driver must "**slowly** pull forward from the stopped position to a point where the driver has a clear view of approaching traffic." **Id.** (emphasis added). Here, after viewing the MVR and considering Trooper Crouse's testimony, we conclude that the evidence fully supports the trial court's conclusion that Appellant did not stop at any point where she could have had a clear view of Trooper Crouse's approaching vehicle. Instead, the MVR shows her vehicle very quickly turning from Sunset Avenue onto Sollenberger Road, without even a slight hesitation to look for oncoming traffic. Thus, we agree with the

trial court that Trooper Crouse possessed probable cause to stop Appellant's vehicle for a violation of section 3323(b).

In Appellant's next issue, she argues that the trial court erred by denying her motion to dismiss the charges pending against her based on a violation of Rule 600. We begin by recognizing that,

> [w]hen presented with a speedy trial claim arising under Pennsylvania Rule of Criminal Procedure 600, our standard of review is well settled.
>
>> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>>
>> The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.
>>
>> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>>
>> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental

speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Bethea***, 185 A.3d 364, 370 (Pa. Super. 2018) (citation and emphases omitted), *appeal denied*, … 219 A.3d 597 ([Pa.] 2019).  The Commonwealth bears the burden of proving, by a preponderance of evidence, that it acted with due diligence throughout the proceedings.  ***See Commonwealth v. Kearse***, 890 A.2d 388, 393 (Pa. Super. 2005).

Pennsylvania Rule of Criminal Procedure 600 provides that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed."  Pa.R.Crim.P. 600(A)(2)(a).  In computing the Rule 600 deadline, however, we do not necessarily count all time following the filing of the complaint.  Rather, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation."  Pa.R.Crim.P. 600(C)(1).

The Rule 600 analysis thus entails three steps:

First, Rule 600(A) provides the mechanical run date.  Second, we determine whether any excludable time exists pursuant to Rule 600(C).  We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600([D]).  As we have explained, Rule 600[ ] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence.  Any such period of delay results in an extension of the run date.  Addition of any Rule 600[ ] extensions to the adjusted run date produces the final Rule 600 run date.  If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

> ***Commonwealth v. Wendel***, 165 A.3d 952, 956–57 (Pa. Super.
> 2017) (citation omitted).

***Commonwealth v. Carl***, 276 A.3d 743, 748–49 (Pa. Super. 2022), *reargument denied* (July 7, 2022).

Here, the criminal complaint was filed against Appellant on June 20, 2019, making the mechanical run date June 19, 2020. ***See*** Trial Court Opinion (TCO II), 12/3/21, at 3 (unnumbered). In the trial court's opinion accompanying its order denying Appellant's Rule 600 motion to dismiss, it explained that the parties stipulated to 320 days of excludable delay, thus making the adjusted run date May 5, 2021. ***Id.*** In addition, the court found that 217 days during 2020 and 2021 were also excludable from the Rule 600 calculations "due to a lack of resources or court dates provided by the court" during the Covid-19 pandemic. ***Id.*** Because "[t]here [was] no proof that the Commonwealth didn't exercise due diligence" during the delays caused by the pandemic, the court concluded that the final, adjusted run date was December 8, 2021. ***Id.*** Appellant's non-jury trial was scheduled for (and ultimately occurred on) December 6, 2021; thus, the court found there was no violation of Rule 600 and it denied Appellant's motion to dismiss. ***Id.*** at 4 (unnumbered).

On appeal, Appellant contends that the court improperly shifted the burden of proof in the Rule 600 analysis. Specifically, she contends that the court erroneously required ***her to prove*** that the Commonwealth ***failed to exercise due diligence***, rather than properly requiring the Commonwealth to first prove that it acted with due diligence before considering whether

delays caused by the pandemic should be excluded from Rule 600 calculations. In support of her position, Appellant points to our Supreme Court's decision in *Commonwealth v. Harth*, 252 A.3d 600 (Pa. 2021). There, the Court held that, "in ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion." *Id.* at 618. Appellant claims that the trial court violated this holding of *Harth* by essentially finding "that the limited availability of trial dates due to the Covid-19 pandemic and a remodeling plan by Franklin County altered the Commonwealth's burden of proof." Appellant's Brief at 21-22.[2] She maintains that the court wholly failed to "address whether the Commonwealth proved by a preponderance of the evidence that it exercised due diligence" before considering whether the court-caused delay

_____

[2] Regarding the 'remodeling plan' referred to by Appellant, the trial court explained that, during the pandemic, it was "using a local theater and one large court room for jury selection to [e]nsure compliance with [Pennsylvania] Department of Health and [Center for Disease Control (CDC)] guidelines regarding social distancing…." TCO II at 2 (unnumbered). In 2021, "the single courtroom large enough to permit Covid-19 protocol[-]compliant jury selection[] was lost to remodeling/construction which was part of [a] pre-Covid-19 construction plan initiated by Franklin County." *Id.* The construction "resulted in the loss of a large[,] secured court space for the selection of [jurors for] jury trials[,]" which further delayed the disposition of criminal cases. *Id.*

during the pandemic should be excluded. *Id.* at 22. Thus, Appellant asks that the court's Rule 600 decision be reversed.

After carefully reviewing the record in this case, and the circumstances surrounding the Covid-19 pandemic, we conclude that Appellant is not entitled to relief. In March of 2020, the Supreme Court of Pennsylvania issued emergency orders suspending Rule 600 statewide through June 1, 2020. *See In re General Statewide Judicial Emergency*, 228 A.3d 1283, 1287 (Pa. Mar. 18, 2020); *In re General Statewide Judicial Emergency*, 230 A.3d 1015, 1019 (Pa. Apr. 28, 2020). While the statewide judicial emergency ended, the Court expressly empowered each judicial district's president judge to enter self-effectuating declarations of judicial emergency, which could "[s]uspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial." *In re General Statewide Judicial Emergency*, 234 A.3d 408 (Pa. May 27, 2020); *see* Pa.R.J.A. 1952(B)(2)(m).

In light of the Supreme Court's orders, on March 18, 2020, the Honorable Shawn D. Meyers, President Judge of the Court of Common Pleas of Franklin County, issued a Declaration of Judicial Emergency for the 39th Judicial District, which is comprised of Franklin and Fulton Counties. In that order, P.J. Meyers explicitly suspended the operation of Rule 600 from March 18, 2020 through April 3, 2020. *See* Declaration, 3/18/20, at 1 (single page). Over the ensuing months, P.J. Meyers entered multiple orders extending the

judicial emergency, and continuing the suspension of Rule 600 calculations at

least through January 31, 2021.[3, 4]

_____

[3] **See** Third Supplemental Emergency Judicial Order, 3/30/20, at 4 (unnumbered) (extending judicial emergency through April 14, 2020, and stating that "[a]ll prior orders … which have established operations or the conduct of business during the judicial emergency [are] hereby incorporated and adopted and proceedings shall continue in accordance with those orders"); Fourth Supplemental Emergency Judicial Order, 4/9/20 (extending judicial emergency through April 30, 2020); Fifth Supplemental Emergency Judicial Order, 4/27/20, at 5 (unnumbered) (extending judicial emergency through May 31, 2020, and stating that "[a]ll prior restrictions outlined in the court's prior orders or setting forth the revised scheduling of matters is hereby affirmed, unless specifically modified by this order"); Sixth Supplemental Emergency Judicial Order, 5/1/20 (extending judicial emergency through June 1, 2020); Seventh Supplemental Emergency Judicial Order, 5/27/20, at 6, 8 (unnumbered) (extending judicial emergency through August 31, 2020, and stating that "Rule of Criminal Procedure 600(C) remains SUSPENDED in all judicial districts through at least June 1, 2020. The [purpose] of this directive is that the time period of the statewide judicial emergency continuing through at least June 1, 2020, SHALL BE EXCLUDED from the time calculation under Rule 600(C)."); Eighth Supplemental Emergency Judicial Order, 6/19/20, at 3, 7 (unnumbered) (extending the judicial emergency through August 31, 2020, and declaring "that the time frame from June 1, 2020 until July 13, 2020 in Franklin County … shall be excluded from the Pa.R.Crim.P. 600 calculation for all criminal cases"); Ninth Supplemental Emergency Judicial Order, 9/1/20, at 1 (extending the judicial emergency through December 31, 2020); Emergency Judicial Order, 11/18/20, at 4, 8 (unnumbered) (extending the judicial emergency through January 31, 2021, and stating that all terms of the court's prior orders remain in full force and effect). Copies of these orders can be found at https://www.pacourts.us/ujs-coronavirus-information.

[4] At the hearing on Appellant's Rule 600 motion to dismiss, the Commonwealth explained that the court had granted a defense-requested continuance until May 11, 2020, and, thus, the delay caused by the judicial emergency did not start in this case until May 11, 2020. **See** N.T. Hearing at 14. Based on the judicial emergency orders, discussed *supra*, the judicial emergency lasted at least through January 31, 2021. The time between May 11, 2020, and January 31, 2021, totals 265 days. It is not clear how the court reached the decision
*(Footnote Continued Next Page)*

At the hearing on Appellant's Rule 600 motion to dismiss in the present case, the Commonwealth argued that these orders required the time during which Appellant's case was delayed due to the judicial emergency to be excluded for Rule 600 purposes. ***See*** N.T. Hearing, 9/29/21, at 13-15. In response, Appellant's counsel ***conceded*** that "there were periods where the [c]ourt was shut down and jury trials were not occurring" and "that that time should ***not*** count against the Commonwealth[] for purpose[s] of Rule 600." ***Id.*** at 52 (emphasis added). Furthermore, Appellant's counsel specifically acknowledged that "[t]he [c]ourt issued a ruling saying Rule 600 is suspended[,]" and he declared that he was "not questioning the [c]ourt's ruling" or "whether or not the [c]ourt was correct in doing so." ***Id.*** at 54.

Instead, Appellant's counsel argued that the Commonwealth had failed to prove that, during the time when Rule 600 was suspended, it acted with due diligence in prioritizing Appellant's case for trial. ***See id.*** Essentially, Appellant contended that, although Rule 600 was suspended, the Commonwealth was still required to demonstrate that it exercised due

_____

that only 217 of those days should be excluded for Rule 600 purposes. Moreover, Appellant does not identify any specific date range(s) between May 11, 2020, and January 31, 2021, that she believes should have been counted against the Commonwealth. Instead, Appellant only vaguely claims that "the [t]rial [c]ourt erred by relying on judicial delay to find the ***dates at issue in 2020 and 2021*** were excludable." Appellant's Brief at 22 (emphasis added). Thus, while it appears that there were potentially 265 days of excludable time during the judicial emergency, we will nevertheless utilize the court's calculation of 217 excludable delays (and an adjusted run date of December 8, 2021), which is more favorable to Appellant.

diligence in deciding which cases to call for trial by conducting Rule 600 calculations and prioritizing cases that were closer to their Rule 600 deadlines. *Id.* at 56. Appellant averred that "Rule 600 was suspended but[,] ultimately[,] we have no evidence that [the Commonwealth] exercised due diligence in bringing the case to trial[,] regardless of the [c]ourt's availability." *Id.* at 58. On appeal, Appellant insists that *Harth* required the court to find that the Commonwealth exercised due diligence ***before*** any judicial delay caused by the pandemic could be considered as excludable time.

Based on the record of the Rule 600 hearing, we reject Appellant's argument that *Harth* applies to the instant case. *Harth* unequivocally addressed "the due diligence component ***of Rule 600***...." *Harth*, 252 A.3d at 618 (emphasis added). Here, Appellant conceded that Rule 600 was ***suspended*** during the at-issue time-periods, she was not challenging the validity or applicability of the suspension of the rule, and that the time during which Rule 600 was suspended did not count against the Commonwealth. Thus, she cannot now claim on appeal that the due-diligence component of Rule 600, as explained in *Harth*, applied during the at-issue time-periods. In other words, because Appellant conceded below that Rule 600 was suspended, she is precluded from now arguing that the Commonwealth had to meet the rule-based due diligence requirement before the delay caused by the judicial

emergency could be excluded.[5]  Accordingly, Appellant has failed to demonstrate any error in the court's denying her Rule 600 motion to dismiss.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/01/2022</u>

---

[5] Appellant makes no argument that the Commonwealth had a due diligence requirement stemming from her constitutional right to a speedy trial.  Thus, our decision does not address that issue.