J-S07005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL EUGENE STOFFA | : | |
| | : | |
| Appellant | : | No. 912 WDA 2020 |

Appeal from the PCRA Order Entered August 14, 2020
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000366-2017,
CP-26-CR-0000367-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL EUGENE STOFFA | : | |
| | : | |
| Appellant | : | No. 913 WDA 2020 |

Appeal from the PCRA Order Entered August 14, 2020
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000366-2017,
CP-26-CR-0000367-2017

BEFORE: SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY SHOGAN, J.:                **FILED: JUNE 16, 2021**

Appellant, Daniel Stoffa, appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We affirm.[1]

In Appellant's direct appeal, a prior panel of this Court summarized the factual history:

> Appellant . . . was in a relationship with [S.H., the] victims' mother[,] for eight years, and he lived with her and her three daughters.
>
> [L.H., t]he oldest daughter[,] testified that on December 31, 2010, Appellant raped her. She was 16 years old at the time. Her testimony included details about her encounter with Appellant, and she testified that this happened three or four more times before she moved out of the house.
>
> [C.T., t]he middle daughter[,] testified that in 2011, Appellant raped her. She was 11 years old at the time. She testified that Appellant continued to rape her for several years.
>
> [L.T., t]he youngest daughter[,] testified that she was 6 years old when Appellant first raped her, and that he continued to rape her for several years until she was 11 or 12 year[s] old.
>
> The jury heard testimony from Dr. Mary Carrasco, who performed a forensic medical exam of the younger two daughters, and Dr. Carrasco testified about the results of the exams. The jury also heard from one of Appellant's coworkers, Joseph Holchin. Mr. Holchin testified about remarks made by Appellant at work.

---

[1] Appellant filed a notice of appeal at each docket number, listing multiple trial court docket numbers. Because a separate notice was filed at each trial court docket, these consolidated appeals have not been quashed. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa. Super. 2020) (en banc). We consolidated these appeals sua sponte on October 14, 2020, because Appellant is appealing from a single order denying his PCRA petition at each of the lower court cases.

- 2 -

Mr. Holchin's testimony was that Appellant would frequently brag to his coworkers on Monday mornings that he "got young pussy." Finally, Appellant testified and denied all allegations.

*Commonwealth v. Stoffa*, 209 A.3d 488, 160 WDA 2018 (Pa. Super., filed January 7, 2019) (unpublished memorandum at *1–2) (record references omitted).

The PCRA court recounted the subsequent procedural history, as follows:

On January 19, 2018, [Appellant] was sentenced to two consecutive terms of 10-20 years imprisonment.

[Appellant] filed a timely Notice of Appeal on January 25, 2018, which was docketed at 160 WDA 2018. On February 21, 2018, [trial counsel,] Attorney [Thomas] Shaffer[,] filed a Concise Statement of Errors Complained of on Appeal on behalf of [Appellant]. On February 22, 2018, Attorney Paul Gettleman entered his appearance on behalf of [Appellant]. Attorney Shaffer subsequently filed a Motion to Withdraw as Counsel, which was granted on March 19, 2018. The Superior Court affirmed [Appellant's] judgment of sentence by a Decision dated January 7, 2019.

On May 20, 2019, Attorney Gettleman filed a timely PCRA Petition on behalf of [Appellant]. The Petition raised a claim of ineffectiveness of counsel, alleging that trial counsel failed to call character witnesses, failed to call other relevant witnesses, never met with [Appellant], and told [Appellant] that "he knew he was guilty the entire time."

A Supplement to the PCRA Petition was filed on October 3, 2019. The Supplement raised an additional claim of ineffectiveness of counsel, reciting an exchange that occurred on the record during *voir dire*, wherein one of the jurors stated that he would probably be unable to serve fairly and impartially. Trial counsel elected not to strike the juror for cause. That juror then served on the jury.

A Second Supplement to the PCRA Petition was filed on November 13, 2019. The Second Supplement raised another claim of ineffectiveness of counsel, alleging that trial counsel failed to call a witness who would have challenged the credibility of one of the victims by testifying that she had firsthand knowledge that the victim was not with [Appellant] on one of the nights that the victim stated she was raped by [Appellant].[1]

[1] A Hearing on the PCRA Petition and Supplemental Petitions was originally scheduled for December 17, 2019.

At the December 17 Hearing, [Appellant's] trial counsel, Attorney Shaffer, did not appear. The Commonwealth represented that it had subpoenaed Attorney Shaffer. This [c]ourt attempted to contact Attorney Shaffer by telephone but could not reach him. The Commonwealth also represented that, based on the PCRA Petitions and a review of the Trial Proceeding Transcript and without Attorney Shaffer present at the Hearing to provide justification, there was no reasonable basis for trial counsel to not strike the juror who indicated he would probably be biased. By consent of both the Commonwealth and [Appellant], this [c]ourt granted the PCRA Petition and granted [Appellant] a new trial. This [c]ourt also reinstated bond and set an additional condition that [Appellant] have no contact with the victims or their immediate family members.

On January 16, 2020, 30 days after this [c]ourt's December 17, 2019 Order, the Commonwealth filed a Motion for Reconsideration. The Motion alleged that the Fayette County Office of the District Attorney received a letter from Attorney Thomas Shaffer on January 13, 2020. According to the Motion, the letter from Attorney Shaffer alleged that Attorney Shaffer was not notified of the December 17, 2019 Hearing, but was prepared to testify as to why he did not strike the juror in question, as well as to why he did not call certain witnesses to testify.

The Commonwealth's Motion for Reconsideration was presented in Motions Court on January 24, 2020. This [c]ourt heard from both the Commonwealth and Attorney Paul Gettleman, PCRA Counsel for [Appellant]. Based on the fact that the Motion was filed within 30 days of this [c]ourt's December 17, 2019 Order, and the importance of

resolving the PCRA Petition on its merits, this [c]ourt granted the Commonwealth's Motion for Reconsideration on January 24, 2020. (The decision was also based on the fact that the Order granting the Petition was not a final order, but an interlocutory order, as per *Commw. v. Harper*, 890 A.2d 1078 (Pa. Super. Ct. 2006)). The January 24, 2020 Order stayed the December 17, 2019 Order and directed the parties to appear for a PCRA Hearing on February 24, 2020.

By a Motion from the Commonwealth, the PCRA Hearing was rescheduled again to March 16, 2020.

On March 16, 2020, a Hearing was held on [Appellant's] PCRA Petition. At the Hearing, Attorney Shaffer testified that he has been an attorney for 20 years, and was a paralegal for over 7 years before that. Attorney Shaffer worked at the Fayette County Public Defender's Officer for 9 years. He testified that he has conducted approximately 250 criminal jury trials as a defense attorney. Many of those cases dealt with sexual assault.

With respect to Juror 400, Attorney Shaffer testified at the PCRA Hearing that Juror 400 was a teacher and "there is no better person that I believe to judge a child than a teacher because every day they judge children . . .[.]" Attorney Shaffer specifically asked [Appellant] during *voir dire* if he wanted to keep Juror 400, and [Appellant] said yes. Attorney Shaffer also stated that he believed Juror 400 was trying to get off of jury duty.

With respect to character witnesses, Attorney Shaffer testified at the PCRA Hearing that he discussed the possibility of using character witnesses with [Appellant] before the trial. However, [Appellant] did not present Attorney Shaffer with any names of potential character witnesses.

[Appellant] called several witnesses at the PCRA Hearing to testify that they would have testified to [Appellant's] reputation in the community had they been contacted by Attorney Shaffer. Gary Jacobs, Gregory Senda, Judy Brown, and Ronald Stoffa—[Appellant's] brother—testified that [Appellant] has a reputation in the community for being peaceful and law-abiding. Deborah Rankin and Rochelle Coddington testified that [S.H.'s] oldest

- 5 -

daughter was babysitting for them on New Year's Eve in 2010, and so [Appellant] could not have possibly raped her on that night because he was not with her.

PCRA Court Opinion, 8/14/20, at 5–7 (record references omitted). The PCRA court denied Appellant's petition on August 8, 2020. Appellant timely appealed and complied with Pa.R.A.P. 1925(b). On September 15, 2020, the PCRA court issued its Statement in Lieu of Opinion, specifying that the reasons for its order denying Appellant post-conviction relief were memorialized in its opinion entered on August 14, 2020. Statement in Lieu of Opinion, 9/15/20, at unnumbered 1.

Appellant presents the following issues for review:

1. Did the trial court err[] in untimely granting the Commonwealth's motion for reconsideration of the granting of a new trial and then rescinding the order granting a new trial more than 30 days after the order granting a new trial was issued?

2. Was trial counsel ineffective when he failed to strike a potential juror who averred that he could not be fair and impartial and would be biased against [Appellant] because of the nature of the crime charged?

3 Did trial counsel commit reversible error when he did not call any good character witnesses in a case where [Appellant] had no criminal history and there was no physical evidence linking him to these crimes?

Appellant's Brief at 3 (re-numbered for ease of disposition; full capitalization omitted).

We first address Appellant's procedural issue as it implicates our jurisdiction to consider this appeal. Appellant contends that the Commonwealth's motion for reconsideration of the PCRA court's order

- 6 -

granting Appellant a new trial was untimely, and therefore, the PCRA court erred in considering and granting the motion. Appellant's Brief at 40.

We acknowledge that the PCRA court's order granting reconsideration was filed more than thirty days after it awarded Appellant a new trial and facially appears untimely. *See* 42 Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."). In explaining why it granted reconsideration, the PCRA court noted its reliance on this Court's decision in *Commonwealth v. Harper*, 890 A.2d 1078 (Pa. Super. 2006). *See* PCRA Court Opinion, 8/14/20, at 6 n.1. In *Harper*, a PCRA court granted a new trial to a petitioner due to testimony by one Michael Watson, who stated that he observed the underlying murder in question and witnessed someone other than the appellant commit the crime. "Based solely on Watson's testimony . . . the PCRA court granted [Harper] a new trial." *Id.* at 1080. Some unspecified time later, the Commonwealth filed a petition for reconsideration and presented testimony from several witnesses, including Watson's parents, and records that established Watson's testimony was entirely false. The PCRA court determined that "[Harper]'s new trial had been obtained by a fraud perpetrated on the court." *Id.* That order, which rescinded the prior order granting a new trial, was entered more than one year after Harper received a new trial. *Id.*

On appeal, Harper argued that the order granting him a new trial was a final order, and could be modified only for a period of thirty days. Harper's argument focused on the interplay of 42 Pa.C.S. § 5505 and Pa.R.Crim.P. 910. First, Section 5505 states that an order may only be modified or rescinded within thirty days, provided no appeal has been taken. Harper paired that statute with Pa.R.Crim.P. 910, which states that "[a]n order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal." Thus, Harper maintained that Rule 910 dictated that the order granting him a new trial was final, and pursuant to Section 5505, could not be revisited after thirty days. We disagreed and held that "[a]n order granting a new trial is not a final order in a criminal proceeding; it is the judgment of sentence that constitutes a final order. Since the order under consideration herein in no manner terminated this criminal action, it was not final." *Id.* at 1081 (citations omitted). Additionally, we held that Rule 910 governed only the finality of an order for purposes of appeal. *Id.* Thus, the order granting a new trial required the Commonwealth to appeal within the applicable time period, but did not create a final order for other purposes. We further held that the Commonwealth did not lose its right to seek reconsideration of the order granting a new trial because that order was interlocutory. *Id.* Pursuant to case law, Section 5505 "applies only to final [o]rders . . . [it] does not apply to interlocutory [o]rders." *Id.* (citing *Commonwealth v. Nicodemus*, 636

A.2d 1118, 1120 (Pa. Super. 1993)).  The **Harper** Court maintained that "in the criminal context, courts retain powers to alter even final judgments beyond the thirty days outlined in Section 5505."  **Harper,** 890 A.2d at 1081. Additionally, we went on to state in *dicta* that "even if the order was deemed 'final' . . . we would permit it to be opened in this instance because it was procured by fraud."  **Id.**

Appellant herein likewise urges that the order granting him a new trial was a final order under Pa.R.Crim.P. 910.  Appellant attempts to distinguish **Harper** by focusing on the language in the decision that Harper's conviction was procured by fraud, and asserts that because there was no similar wrongdoing in the instant matter, **Harper** does not control.

We disagree.  In **Harper**, the *dicta* stating that the order in question could be revisited even if it were final is not the holding; this Court actually held that the order granting PCRA relief was interlocutory, at least for purposes of Section 5505.  "Rule 910 does not change the character of the order in question for purposes of Section 5505, which governs the modification of orders and is a legislative enactment."  **Harper**, 890 A.2d at 1081.  As we are bound by **Harper**, we conclude that the PCRA court had the authority to reconsider its order granting Appellant a new trial beyond the thirty-day restriction of 42 Pa.C.S. § 5505.  We turn to Appellant's allegations of ineffective assistance of counsel.

Appellant first asserts that the trial counsel was ineffective when he failed to strike a biased juror. Appellant's Brief at 8. Counsel is presumed to have rendered effective assistance. ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1117 (Pa. 2012). Therefore, to obtain relief on a claim of ineffective assistance of counsel, Appellant must prove that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his actions or failure to act; and (3) the petitioner was prejudiced by counsel's deficient performance such that there is a reasonable probability that the result of the proceeding would have been different absent counsel's error or omission. ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987). Failure to satisfy any one of these prongs is fatal to a claim of ineffective assistance. ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1128 (Pa. 2011) (quotation omitted).

Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233 (Pa. 1981)). Our Supreme Court has defined "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a

> finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.
>
> *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (quoting *Commonwealth ex rel. Washington v. Maroney*, 235 A.2d 349 (Pa. 1967)).

*Commonwealth v. Douglas*, 645 A.2d 226, 231 (Pa. 1994).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that but for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 786 A.2d at 213. Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005) (quotation omitted). We are bound by the PCRA court's credibility determinations where there is support for them in the record. *Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa. Super. 2014).

The PCRA court described the factual underpinnings of Appellant's biased-juror claim, as follows:

> During *voir dire*, this [c]ourt asked the following question: "Is there anything about the nature of this case or the crime itself, which would cause you to be biased in your deliberations against the defendant?" After three prospective jurors indicated that they would be biased, this [c]ourt reiterated the basic Constitutional princip[le] that all persons who come before the court are presumed to be innocent until proven guilty beyond a reasonable doubt. Another five prospective jurors then also indicated that they would be biased. At issue here is the last juror who indicated yes to that question, Juror Number 400. This [c]ourt followed up

- 11 -

with that juror, "do you believe that you would be unable to serve as a fair and impartial juror?" Juror 400 answered, "Probably."

At the request of Attorney Shaffer, this [c]ourt then asked the prospective jurors as a whole whether anyone or a member of their household is involved with any child advocacy group. Juror 400 indicated that this applied to him. Several other jurors also indicated that it applied to them. This [c]ourt then asked those who answered yes to raise their hands if they would be unable to serve fairly and impartially because of their involvement with children. Juror 400 raised his hand. No other questions were asked.

This [c]ourt then held a sidebar discussion with Attorney Shaffer and [[Assistant District] Attorney [Robert] Harper for any motions to strike jurors for cause. Attorney Shaffer made a motion to strike certain jurors for cause, starting with a juror—not the one in question—who stated he would possibly be biased against [Appellant]. The Assistant District Attorney suggested that rather than striking the juror, this [c]ourt could caution the jurors instead. This [c]ourt explicitly stated to Attorneys Shaffer and Harper:

> [C]ertainly you'd agree we want to seat partial (sic) and unbiased jurors and the juror's hesitancy in the way he answered the question and said that he would possibly be biased. I'm going to excuse him.

This [c]ourt then struck that juror who said he would be biased against [Appellant]. Attorney Shaffer then made motions to strike other jurors who indicated they would be or would possibly be biased against [Appellant], which this [c]ourt granted.

At the end of the sidebar discussion, this [c]ourt specifically brought up several jurors, including Juror Number 400, for whom Attorney Shaffer did not make a motion to strike for cause. After striking eight jurors for cause, this [c]ourt stated:

> Counsel would you approach once again, please. I'm just raising this with you because I had notes on other jurors and I haven't heard any motions. I'll give you the opportunity.

* * *

> We have also, seat number 17, badge number 400. Upon inquiry he would probably be biased.

> Attorney Shaffer stated that he thought Juror Number 400 was okay because he was a teacher and "was probably educated to understand the Constitution." No motion was made to strike Juror 400. Juror 400 was then selected to sit on the jury.

PCRA Opinion, 8/14/20, at 1–3 (record references omitted).

The PCRA court then explained why trial counsel's failure to strike Juror 400 was not tantamount to ineffective representation:

> Here, trial counsel testified at the PCRA Hearing to two things that are entirely appropriate to consider as to whether he was ineffective for failing to make a motion to strike Juror 400 for cause. First, Attorney Shaffer testified that he had a strategic reason for seating Juror 400. Attorney Shaffer argued that Juror 400 was a teacher, and that there would be no better person to judge a child then a teacher. Arguably, teachers have more experience with children, and so they would be better at determining whether children are lying. This case depended almost entirely on the credibility of children. If the child victims here were making up such stories, a teacher might have a better ability to determine this than a person of a different profession or background.

> It is also relevant to this point that Attorney Shaffer has conducted around 250 criminal jury trials. Attorney Shaffer is, by any measure, an experienced criminal trial attorney, and his professional insight would have given him an ability to determine which prospective jurors might be most favorable to his client and should therefore be seated on the jury. And while this [c]ourt certainly questioned such a decision by Attorney Shaffer when it specifically asked him about Juror 400, it is not for this [c]ourt to substitute its own judgment with that of trial counsel.

> Second, Attorney Shaffer testified at the PCRA Hearing that [Appellant] consented to Juror 400 being seated on the jury. If such were the case, this [c]ourt finds [that] . . . a defendant would be able to "sandbag"—or sabotage—a court by insisting that his counsel leave a biased juror on the panel and then later claim that he told his counsel to strike the juror [(quoting **Hughes v. United**

***States***, 258 F.3d. 453, 464-465 (6th Cir. 2001) (Siler, J. dissenting)]. Although this seems counter-intuitive, a defendant might do this when the evidence against him is so strong that he believes his best chance is to be found guilty, only to be awarded a new trial several years after the incidences occurred when the victims would have to be brought back to testify again about their abuse.

\* \* \*

Here, [Appellant] has proven that the underlying claim is of arguable merit—the seating of a juror who said he would "probably" be biased against [Appellant]. This could have cost [Appellant] a fair trial, which he is entitled to under the United States and Pennsylvania Constitutions. For the sake of argument, even if it is assumed that [Appellant] has proven that Attorney Shaffer had no reasonable strategic basis for his inaction in not making a motion to strike Juror 400, [Appellant] must still prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceedings would have been different. This [c]ourt finds that [Appellant] has failed to meet this third prong of the test.

The evidence against [Appellant] at trial overwhelmingly supported his conviction. There was not just one or two, but there were three separate children who testified that [Appellant] had raped them multiple times. Although these girls were sisters, the oldest one did not really have a relationship with the younger sisters. Further, one of [Appellant's] coworkers testified that [Appellant] would frequently come into work on Monday mornings boasting that he "got young pussy" over the weekend. This statement by [Appellant] was referred to as "tantamount to a confession" by [Appellant] himself in his direct appeal. *See, Commw. v. Stoffa,* 160 WDA 2018 at 5-6 (Pa. Super. Ct. January 7, 2019) (non-precedential decision) ("The fact that [Appellant] virtually admitted his criminal conduct to a coworker is certainly prejudicial to his claim of innocence, but it is not unfairly prejudicial"). Further, [Appellant] would come into work with scratches all over himself, which was additional corroborating evidence that the "young pussy" he was getting was fighting back against him because he was forcing himself on them.

This [c]ourt finds that [Appellant] has not met his burden of proving ineffective assistance of trial counsel for failing to make a motion to strike Juror 400 for cause. This [c]ourt finds that trial

counsel had a reasonable basis for keeping such a juror, even if it was not the course that this [c]ourt would have chosen. Further, even if trial counsel had made a motion to strike Juror 400, there is not a reasonable probability that the outcome of the trial would have been different.

PCRA Court Opinion, 8/14/20, at 11–13.

When reviewing a PCRA order, we examine whether the record supports the PCRA court's factual findings and whether its legal conclusions are free from error. *Commonwealth v. Hannibal*, 156 A.3d 197, 206 (Pa. 2016) (citation omitted). We view the PCRA court's findings and evidence of record in the light most favorable to the prevailing party. *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012). The petitioner has the burden of persuading us that the PCRA court erred and that such error requires relief. *Commonwealth v. Wholaver*, 177 A.3d 136, 144–145 (Pa. 2018) (*en banc*).

Appellant contends that the sitting of a biased juror relieves Appellant of his obligation to demonstrate the third prong of prejudice. Appellant's Brief at 8. However, with one exception, Appellant's argument conflates "harmless error" with the more-exacting "actual prejudice" standard that is applicable under the PCRA.[2]

---

[2] Appellant cites a decision from the Court of Appeals for the Sixth Circuit to substantiate his position that the sitting of a biased juror constitutes *per se* ineffectiveness. In *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001), the court of appeals held that the defendant's counsel was ineffective for failing to strike a biased juror. *Id.* at 462. The court further concluded that the impaneling of a biased juror requires a new trial and prejudice under *Strickland* is presumed. *Id.* We point out, however, that this Court has
*(Footnote Continued Next Page)*

- 15 -

never held that an attorney's performance during *voir dire* is not subject to scrutiny under **Strickland**, nor does Appellant cite any case from this Court so holding. Rather, we have recognized that decisions made during jury selection involve trial strategy to which courts should be highly deferential. *See Chmiel*, 30 A.3d at 1174 (where record indicates that trial counsel had a reasonable strategy for either asking that jurors be dismissed or not opposing their dismissal, counsel could not be determined to have rendered ineffective assistance).

Furthermore, while recognizing the legal precept that Pennsylvania courts are not bound by the decisions of the federal courts of appeals, *see Commonwealth v. Steckley*, 128 A.3d 826, 833 (Pa. Super. 2015), we find that **Hughes** is distinguishable. In the preface to its discussion of counsel's ineffectiveness for sitting a biased juror, the Sixth Circuit referenced the general proposition that "[a]bsent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel." **Hughes**, 253 A.3d at 460. The **Hughes** Court then reasoned: "Because the district court failed to respond to [the subject juror's] express admission of bias on *voir dire,* we find that counsel's failure to respond in turn was objectively unreasonable under **Strickland**. **Hughes**, 258 F.3d at 462. "When a venireperson expressly admits bias on *voir dire,* without a court response or follow-up, for counsel not to respond in turn is simply a failure to exercise the customary skill and diligence that a reasonably competent attorney would provide." **Id.** (quotation omitted).

Despite the Court of Appeals' focus on the lack of follow-up questioning of the subject, and its reference to the general proposition that the failure to request the removal of a biased juror, **absent a strategic reason**, can constitute ineffective assistance of counsel, the **Hughes** Court ultimately concluded that: "The question of whether to seat a biased juror is not a discretionary or strategic decision" and, "[t]he seating of a biased juror who should have been dismissed for cause requires reversal of the conviction." **Id.** at 463 (quotation omitted). The **Hughes** Court then surmised that no "sound trial strategy could support counsel's effective waiver of Petitioner's basic Sixth Amendment right to trial by impartial jury." **Id**.

On this point, we agree with the PCRA court that the contrary view of the significance of possible trial counsel strategy expressed in the dissenting opinion is more persuasive than that espoused in the majority opinion. The dissent observed:

*(Footnote Continued Next Page)*

[T]here is no basis to determine whether a strategic decision was made by counsel in this case. The only issue which was certified for this panel to answer was whether counsel's failure to strike a juror constituted ineffective assistance. I would not find that this act alone constitutes ineffective assistance of counsel.

* * *

Because there is no sworn testimony in the record concerning this issue of juror bias and why the juror was not stricken, I think that a remand and order of a new trial in this case is more relief than is justified under the law. I would remand this case to the district court, but for purposes of hearing evidence on the question of why counsel decided not to strike [the juror at issue]. Counsel has never explained why he took this action. I can think of several scenarios in which counsel might decide to keep [the juror at issue] on the panel, even with her answers to the voir dire questions. For instance, [the petitioner] may have requested that [the juror] remain on the jury. . . . In addition, there may have been something in the background of [the juror] that either [the petitioner] or counsel knew, that is not obvious on the record. If counsel did not strike the juror because [the petitioner] requested it, I would not find ineffective assistance of counsel. . . . I do not find that counsel's failure to ask further questions on voir dire or to strike the juror, without counsel's explanation, was objectively unreasonable under the criteria found in **Strickland**. . . . Otherwise, a defendant could "sandbag" the court by insisting that his counsel leave a juror on the panel and then later claim that he told counsel to strike the juror. Therefore, I would remand only for a factual determination of the strategy by counsel in refusing to pursue voir dire or strike [the juror] and then for the court to determine whether that conduct was objectively reasonable under **Strickland**. A new trial is not yet justified under the current status of the record.

**Id**. at 464-465 (Siler, J., dissenting).

*(Footnote Continued Next Page)*

Our Supreme Court clearly delineated this distinction in
**Commonwealth v. Spotz**, 84 A.3d 294 (Pa. 2014) ("**Spotz II**"):

> [T]he test for prejudice in the ineffectiveness context is more exacting than the test for harmless error, and the burden of proof is on the defendant, not the Commonwealth. As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error. . . .
>
> A defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings. This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action. . . . [The harmless error standard] places the burden on the Commonwealth to show that

---

The scenario envisioned by the dissent, wherein the sitting of a biased juror may constitute a reasonable trial strategy, manifested itself in the instant matter. First, and significantly, the PCRA court credited Attorney Shaffer's testimony that Appellant consented to keeping Juror 400 on the jury. **See** Trial Court Opinion, 8/14/20, at 7 ("Attorney Shaffer specifically asked [Appellant] during *voir dire* if he wanted to keep Juror 400, and [Appellant] said yes.). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. Super. 2015).

Additionally, Attorney Shaffer articulated a strategy for keeping Juror 400 on the jury, *i.e.*, Juror 400 was a teacher and "[t]here is no better person that I believe to judge a child than a teacher because every day they judge children." N.T. (PCRA), 3/16/20, at 25–26; **see also** N.T. (Trial), 2/2/18, at 33 ("I thought [Juror 400] was okay myself because he was a teacher."). It is also consequential that Attorney Shaffer moved to strike nine other of the jurors who indicated bias, indicating that he was not sitting idly by during the jury selection process. **Id**. at 29–33. Owing to our conclusion that Appellant could not prove the prejudice prong of **Strickland/Pierce**, we need not determine the reasonableness of trial counsel's strategy. We merely note that, in contrast to **Hughes**, trial counsel was actively engaged during *voir dire* and offered an explanation for sitting the juror who expressed bias.

> the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the **Pierce** prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel.

*Id*. at 315 (quoting **Commonwealth v. Gribble**, 863 A.2d 455, 471 (Pa. 2004) (internal citations omitted).

Instantly, Appellant's averments concerning prejudice are unavailing as a result of this distinction. "In making [a prejudice] determination, a court hearing an ineffectiveness claim must consider the **totality of the evidence** before the judge or jury . . . ." **Commonwealth v. Lesko**, 15 A.3d 345, 383 (Pa. 2011) (emphasis in original). Here, the Commonwealth's case rested largely upon testimonials from L.H., C.T., and L.T. that were mostly uncorroborated by physical evidence; however, Appellant was unsuccessful in eliciting significant inconsistencies or falsities in their respective testimonies. *See* N.T. (Trial), 1/3/18, at 70–75 (cross-examination of L.H.); *id*. at 91–94 (cross-examination of C.T.); *id.* at 108–110 (cross-examination of L.T.). Additionally, and particularly detrimental to Appellant's claim of innocence, was Appellant's co-worker's testimony that Appellant would boast that he "got young pussy all the time." N.T. (Trial), 1/4/18, at 166. As aforementioned, on direct appeal, this Court characterized this statement as "Appellant virtually

- 19 -

admitting his criminal conduct." **See Stoffa**, 160 WDA 2018 (unpublished memorandum at *6). In light of the overwhelming evidence of Appellant's guilt, we discern no error on the part of the PCRA court in denying relief on the basis of this claim of ineffective assistance.

Appellant also claims that trial counsel was ineffective for failing to call character witnesses who would testify as to Appellant's reputation in the community. Appellant specifically avers that because the evidence of his guilt was circumstantial and "far from overwhelming . . ., it is quite possible that the presentation of character witnesses attesting to [Appellant's] good character could have tilted the balance of the scales in his favor." Appellant's Brief at 27. Appellant also maintains that evidence was presented at the PCRA hearing that two witnesses would have testified that "on the New Year's Eve 2010, the night when the alleged rape took place at [Appellant's] house, [L.H.] was babysitting" at a different house. **Id.** at 29.

> In establishing whether defense counsel was ineffective for failing to call witnesses, an appellant must prove: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Medina**, 209 A.3d 992, 998 (Pa. Super. 2019) (citations and footnote omitted).

The PCRA court resolved this allegation of trial counsel's stewardship as follows:

- 20 -

Here, [Appellant] proved at the PCRA Hearing the first, second, and fourth prongs. The witnesses clearly existed, and they testified they were available and would have been willing to testify for the defense at his trial. With respect to the third prong, Attorney Shaffer testified at the PCRA Hearing that [Appellant] had not provided him with names of potential character witnesses prior to trial. However, . . .this alone is not a reason to not call character witnesses. As such, Attorney Shaffer should have known of the existence of such witnesses, and [Appellant] has satisfied the third prong.

However, [Appellant] has not proven to this [c]ourt that the absence of such testimony was so prejudicial as to have denied him a fair trial. First, the witnesses would have testified that [Appellant] had a reputation in the community for being peaceful and law-abiding. However, [Appellant] was accused of raping children—an act that is done under the cover of secrecy. Whether [Appellant] had a reputation for being law-abiding during the day does not detract from his actions at night.

Second, unlike the cases cited by [Appellant], this is not a case where there was only one or two witnesses and one occurrence. Here, there were three witnesses—all girls, all children—who testified that [Appellant] raped them repeatedly over the course of a period of time. Further, one of [Appellant's] coworkers testified about remarks made by [Appellant] at work that corroborated his actions. Based on the overwhelming evidence against [Appellant] that was presented by the Commonwealth at trial, this [c]ourt cannot find that [Appellant] satisfied the fifth prong. This [c]ourt does not find Attorney Shaffer's failure to call character witnesses to have been ineffective, because there is no reasonable possibility that their testimony would have changed the outcome of the trial.

Finally, [Appellant] claims that trial counsel was ineffective for failing to call witnesses who would have testified that [L.H.] was babysitting for them on New Year's Eve in 2010, and that therefore [Appellant] could not have raped her. This argument fails for three reasons.

First, [L.H.] testified that [Appellant] raped her multiple times, so even if she got one of the dates wrong, there was still testimony that [Appellant] raped her.

Second, [C.T. and L.T.] testified that [Appellant] raped them, so even if [Appellant] was not with the oldest daughter on New Year's Eve in 2010, he still could have been found guilty of raping the other daughters.

Third, and perhaps most importantly, the witnesses now being offered by [Appellant] to bolster his alibi would have directly contradicted his own trial testimony. Indeed, [Appellant] admitted at trial that he was with the oldest daughter on New Year's Eve in 2010. See [N.T. (Trial), 1/4/18, at 176]. Therefore, the testimony of these two witnesses would not have helped [Appellant].

PCRA Court Opinion, 8/14/20, at 14–16.

As we have already determined that there is prodigious evidence of Appellant's guilt, particularly his own statement inferring his predatory behavior, we find no error in the portion of the PCRA court's conclusion that Appellant cannot demonstrate that he was prejudiced by trial counsel's failure to call character witnesses. Furthermore, because Appellant's proposed witnesses regarding L.H.'s whereabouts on New Year's Eve 2010 contradicted Appellant's own recollection, their testimony would erode, rather than rehabilitate, Appellant's credibility. Accordingly, Appellant is not entitled to relief on this assertion of ineffectiveness.

In conclusion, the PCRA did not err in the first instance in exercising its jurisdictional authority to rule on the Commonwealth's motion for reconsideration. Additionally, because the PCRA court's decision that counsel was effective is supported by the record and is free of legal error, the order denying PCRA relief is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  06/16/2021